UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL PUBLIC RADIO, INC., and
TOM DREISBACH,

    *Plaintiffs*,

        v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

    *Defendant*.

Civ. A. No. 20-2468 (RCL)

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO
<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

DANIEL P. SCHAEFER
Assistant United States Attorney

*Counsel for Defendant*

# TABLE OF CONTENTS

Argument ........................................................................................................................................ 1

I.  The Materials Satisfy the Inter-Agency or Intra-Agency Threshold Requirement. ........... 1

II. The Materials Are Covered by the Deliberative Process Privilege. ................................... 1

   A. The Expert Reports Are Pre-Decisional. ................................................................ 1

   B. The Withheld Portions of the Expert Reports Contain Deliberative Material. ....... 6

III. Plaintiff Fails to Establish That the Information That the Department Withheld Is
    Already in the Public Domain. .......................................................................................... 10

IV. The Department's Evidence Shows Reasonably Foreseeable Harm. ............................... 10

Conclusion ................................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Abtew v. Dep't of Homeland Sec.*,
  808 F.3d 895 (D.C. Cir. 2015) ................................................................................................ 11

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983) .............................................................................................. 10

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
  641 F.3d 504 (D.C. Cir. 2011) .................................................................................................. 7

*Bloomberg, L.P. v. SEC*,
  357 F. Supp. 2d 156 (D.D.C. 2004) .......................................................................................... 9

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ......................................................................................... 2, 3, 4

*Competitive Enter. Inst. v. Dep't of State*,
  486 F. Supp. 3d 171 (D.D.C. 2020) ........................................................................................ 13

*Ctr. for Investigative Reporting v. Customs & Border Prot.*,
  436 F. Supp. 3d 90 (D.D.C. 2019) .................................................................................... 10, 11

*Elec. Frontier Found. v. Dep't of Justice*,
  739 F.3d 1 (D.C. Cir. 2014) ...................................................................................................... 7

*Elec. Privacy Info. Ctr. v. DHS*,
  384 F. Supp. 2d 100 (D.D.C. 2005) ...................................................................................... 2, 4

*Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*,
  443 U.S. 340 (1979) .................................................................................................................. 2

*Fortson v. Harvey*,
  407 F. Supp. 2d 13 (D.D.C. 2005) ........................................................................................ 8, 9

*Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  762 F. Supp. 2d 123 (D.D.C. 2011) ...................................................................................... 4, 5

*Hall & Assocs. v. EPA*,
  Civ. A. No. 18-1749 (RDM), 2021 WL 1226668 (D.D.C. Mar. 31, 2021) .............................. 4

*Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  243 F. Supp. 3d 155 (D.D.C. 2017) .......................................................................................... 7

*Jud. Watch, Inc. v. Dep't of Just.*,
  102 F. Supp. 2d 6 (D.D.C. 2000) ......................................................................................... 2, 3

*Jud. Watch, Inc. v. Dep't of Just.*,
  Civ. A. No. 17-0832 (CKK), 2019 WL 4644029 (D.D.C. Sept. 24, 2019) ........................ 11, 12

*Jud. Watch, Inc. v. FDA*,
  449 F.3d 141 (D.C. Cir. 2006) ................................................................................................. 1, 5

*Keeping Gov't Beholden, Inc. v. Dep't of Just.*,
  Civ. A. No. 17-1569 (FYP), 2021 WL 5918627 (D.D.C. Dec. 13, 2021) .............. 10, 11, 12, 13

*Landmark Legal Found. v. IRS*,
  267 F.3d 1132 (D.C. Cir. 2001) .................................................................................................. 6

*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) .................................................................................................. 7, 9

*McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*,
  849 F. Supp. 2d 47 (D.D.C. 2012) .............................................................................................. 8

*Nat'l Sec. Archive v. CIA*,
  752 F.3d 460 (D.C. Cir. 2014) ................................................................................................ 7, 9

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) .................................................................................................................... 4

*Pub. Citizen, Inc. v. Dep't of State*,
  11 F.3d 198 (D.C. Cir. 1993) .................................................................................................... 10

*Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*,
  598 F.3d 865 (D.C. Cir. 2010) .................................................................................................. 12

*Quarles v. Dep't of the Navy*,
  893 F.2d 390 (D.C. Cir. 1990) .................................................................................................... 9

*Reinhard v. Dep't of Homeland Sec.*,
  Civ. A. No. 18-1449 (JEB), 2019 WL 3037827 (D.D.C. July 11, 2019) ............................... 8, 9

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. Dep't of Just.*,
  823 F.2d 574 (D.C. Cir. 1987) .................................................................................................... 4

*Smith v. Dep't of Labor*,
  798 F. Supp. 2d 274 (D.D.C. 2011) ............................................................................................ 4

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) .................................................................................................. 13

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) .................................................................................................. 10

*Wolfe v. Dep't of Health & Hum. Servs.*,
   839 F.2d 768 (D.C. Cir. 1988) .................................................................................................. 7

Plaintiff's Opposition to Defendant's Motion for Summary Judgment fails to establish the existence of a genuine dispute of material fact concerning any of the records that Defendant U.S. Department of Homeland Security ("Department" or "Agency") withheld under Freedom of Information Act ("FOIA") Exemption 5.  Additionally, Plaintiff's Cross-Motion for Summary Judgment fails to establish the absence of genuine dispute of material that warrants the Court granting summary judgment to Plaintiff.[1]  For the reasons explained more fully below, Defendant respectfully requests that the Court grant summary judgment to Defendant, and deny summary judgment to Plaintiff.

## Argument

**I.     The Materials Satisfy the Inter-Agency or Intra-Agency Threshold Requirement.**

Defendant's Motion for Summary Judgment ("Defendant's Motion") demonstrated that the materials in question qualify as intra-agency memoranda under the consultant corollary. *See* Def.'s Mem. of Points & Authorities ("Def.'s Mem.") at 6-9 (ECF No. 17-1).  Plaintiff's Opposition does not argue otherwise.  *See generally* Pl.'s Mem.  As explained in Defendant's Memorandum, the Court should grant summary judgment to Defendant on this first issue.

**II.    The Materials Are Covered by the Deliberative Process Privilege.**

   **A.     The Expert Reports Are Pre-Decisional.**

Plaintiff's Opposition fails to establish the existence of a genuine dispute of material fact on whether the expert Reports with contested Exemption 5 withholdings are predecisional. *See* Pl.'s Mem. at 11-12, 17-20.  A document is "predecisional" if it is "generated before the adoption of an agency policy."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).

---

[1]     Plaintiff filed a combined Memorandum in support of its Opposition to Defendant's Motion and its Cross-Motion for Summary Judgment (hereinafter, "Plaintiff's Memorandum" or "Pl.'s Mem.").

The predecisional character of a document is not altered by the fact that an agency has subsequently made a final decision. *See Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 360 (1979) (holding that, because Exemption 5 is intended to protect free flow of advice, issuance of decision does not remove need for protection); *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 112-13 (D.D.C. 2005) ("Contrary to plaintiff's assertion that materials lose their Exemption 5 protection once a final decision is taken, it is the document's role in the agency's decision-making process that controls."); *Jud. Watch of Fla., Inc. v. Dep't of Just.*, 102 F. Supp. 2d 6, 16 (D.D.C. 2000) (rejecting as "unpersuasive" assertion that deliberative process privilege is inapplicable after deliberations have ended and relevant decision has been made). Thus, it is irrelevant and immaterial that CRCL may have later closed an investigation before the records were eventually processed and produced to Plaintiff in response to its FOIA request. *See, e.g.*, Pl.'s Mem. at 11-12 (asserting that the expert reports in dispute lost their pre-decisional status when CRCL subsequently closed certain investigations).

Contrary to Plaintiff's argument, the mere fact that CRCL may have later decided to close an investigation does not establish that the Department adopted an expert's preliminary findings or recommendations. *See* Pl.'s Mem. at 19-20; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). As explained in the Agency's declaration, the expert reports at issue here contain the experts' unverified observations of first impression. *See* Def.'s SMF ¶ 19. CRCL is not required to adopt its experts' preliminary findings or recommendations. *See id.* ¶ 20. CRCL may have reviewed more than one expert report before preparing a recommendation memo with CRCL's

recommendations to the Department component that was the subject of the investigation. *See id.* Additionally, the affected Department component may or may not concur with CRCL's recommendations. For example, one of the exhibits to Plaintiff's attorney's declaration is a CRCL Memorandum dated December 10, 2019, that "discusses the outcome of the investigation that [CRCL] conducted into the conditions of detention for [ICE] detainees at the Coastal Bend Detention Center (CBDC) in Robstown." Mishkin Decl. Ex. 3 (ECF No. 19-6). ICE either partially concurred or did not concur with several of CRCL's recommendations concerning the detention center's medical care. ECF No. 19-6 at 3-4; *see also* Def.'s SMF ¶ 7. Thus, an eventual decision by CRCL to close an investigation would not necessarily reflect the Agency's adoption of an expert's preliminary findings or recommendations.

Moreover, the fact that the Department may have later released reports or memoranda prepared by CRCL that summarize or discuss its experts' preliminary findings and recommendations has no bearing on whether the experts' reports were pre-decisional when they were created. *See id.* at 12; Mishkin Decl., Exs. 2 & 3 (ECF Nos. 19-5 & 19-6). As explained in the Agency's declaration, the CRCL recommendation and investigation memoranda are just that—recommendations. They are not final agency decisions. *See* Def.'s SMF ¶¶ 4, 6-7, 20. Indeed, the Department redacted limited portions of the CRCL recommendation memoranda that contained deliberative-process privileged material. *See, e.g.*, ECF No. 19-5 at 3-4; ECF No. 19-6 at 3-4. Even so, the release of a report that was created by CRCL at a later stage of the deliberative process does not alter the pre-decisional character of a document created by one of CRCL's experts at an earlier stage of the decision-making process. The experts' reports were necessarily antecedent to any "decision" by CRCL to issue a recommendation memorandum.

3

*See Smith v. Dep't of Labor*, 798 F. Supp. 2d 274, 282 (D.D.C. 2011); *Elec. Priv. Info. Ctr.*, 384 F. Supp. 2d at 100, 112-13.

The Court may also dispense with Plaintiff's argument that the Department has supposedly "fail[ed] to identify with any particularly [sic] *what* decision(s) each report allegedly precedes." Pl.'s Mem. at 18 (emphasis in the original). "'The D.C. Circuit has indicated that '[t]he failure to specify the relevant final decision constitutes a sufficient ground for remanding [Exemption 5 claims] to the district court.'" *Hall & Assocs. v. EPA*, Civ. A. No. 18-1749 (RDM), 2021 WL 1226668, at *10 (D.D.C. Mar. 31, 2021) (quoting *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. Dep't of Just.*, 823 F.2d 574, 584 (D.C. Cir. 1987)). "That does not mean, of course, 'that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared.'" *Id.* (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975)). "Instead, 'even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.'" *Id.* at 10 (*Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011)).[2]

The Department's *Vaughn* index and supporting declaration sufficiently describe and explain what deliberative process was involved and the role played by the expert reports in the course of that process. *See* Def.'s Mem. at 12; Def.'s SMF ¶¶ 3-7. The Department's evidence

---

[2]   *See also Sears*, 421 U.S. at 151 n.18 ("Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared."); *Coastal States Gas Corp.*, 617 F.2d at 868 (agency's evidence must establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process"); *Gold Anti-Trust Action Committee*, 762 F. Supp. 2d at 136 (rejecting plaintiff's contention that "the Board must identify a specific decision corresponding to each [withheld] communication").

explains CRCL's role in investigating complaints alleging civil rights and civil liberties issues and making recommendations as part of the Agency's decision-making process concerning whether or how to implement or operationalize a response to a complaint.  *See* Def.'s SMF ¶¶ 8-14.  The Department has sufficiently explained the role that the experts' preliminary investigative reports play in the Agency's decision-making process on how to address any civil rights or civil liberties concerns that may be identified as part of its investigation.  *Id.* ¶¶ 17-21.  The Department justified its determinations that the experts' preliminary findings and recommendations were recreated as part of an ongoing decision-making process and that the reports preceded the adoption of any final agency decision or policy concerning the complaints in question.

   Plaintiff also attempts to fault the Agency for making repetitive statements in some portions of the *Vaughn* index.  *See* Pl.'s Mem. at 12.  The documents with contested Exemption 5 withholdings all contain reports prepared by CRCL's subject matter experts.  *See* Def.'s SMF ¶ 17.  As to each of the documents in dispute, CRCL's experts conducted initial investigations of complaints concerning conditions and alleged abuses at ICE immigration detention facilities.  *See id.*  Therefore, it is unsurprising that some of the statements in the *Vaughn* index concerning the decisional process at issue repeat from one entry to the next.  In cases like this one involving large volumes of processed records and contested withholdings, courts have consistently upheld *Vaughn* indices where agencies have grouped similar documents into categories and provided descriptions of the withholdings based on those categories, provided that the categories are not overly broad.  *See, e.g.*, *Judicial Watch*, 449 F.3d at 148 (concluding that agency's "decision to tie each document to one or more claimed exemptions in its index and then summarize the commonalities of the documents in a supporting affidavit is a legitimate way of serving those

5

functions"); *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) (finding that repetitive nature did not make *Vaughn* Index deficient because it was "not the agency's fault that thousands of documents belonged in the same category, thus leading to exhaustive repetition"). Yet, Plaintiff's critique of the repetition also fails to account for the whole *Vaughn* index. In addition to the general statements that apply to each of the expert reports, the *Vaughn* index also includes a detailed description that applies to each of the unique reports. For example, the first entry on the *Vaughn* index includes the following description of the expert report in question:

> This document contains a Report prepared by a medical care consultant retained by the Department of Homeland Security ("DHS" or "Agency") Office of Civil Rights and Civil Liberties ("CRCL"). CRCL's expert consultant conducted an initial investigation evaluating the medical care available to persons being detained at the Contra Costa County Jail. CRCL redacted in part this Report, which included the expert's preliminary findings and initial recommendations regarding medical care resources at the Contra Costa County Jail.

Agency *Vaughn* Index, Entry No. 1. ECF No. 17-3 at 13. Together, the Agency's *Vaughn* index and supporting declaration sufficiently describe the Agency's deliberative process and the role that each of the expert reports played in the course of that process. The Department thus satisfied its evidentiary burden of establishing that the expert reports were pre-decisional.

  **B.**  **The Withheld Portions of the Expert Reports Contain Deliberative Material.**

  Plaintiff's Opposition also fails to create a genuine dispute on whether the Department's withholdings are deliberative in nature. On this second required element of the deliberative-process privilege, Plaintiff argues that the Department improperly withheld factual information. Plaintiff mainly objects to the Department's withholding of what Plaintiff characterizes as "factual summaries of complaints and allegations of misconduct investigated by CRCL experts" and "factual summaries of ICE facilities' compliance, or lack of compliance, with policies and regulations." Pl.'s Mem. at 13.

6

In this Circuit, factual information may be withheld when, as here, it is so thoroughly integrated with deliberative material that its disclosure would expose or cause harm to the Agency's deliberations. *See Elec. Frontier Found. v. Dep't of Justice*, 739 F.3d 1, 13 (D.C. Cir. 2014) (finding that "context matters," and here the entire document, including factual material, "reflects the full and frank exchange" so that factual portions "could not be released without harming the deliberative processes of the government"); *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) ("[T]he legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process."). The D.C. Circuit has stated that factual information should be examined "in light of the policies and goals that underlie" the privilege and in "the context in which the materials are used." *Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc).

Even purely factual material may be properly withheld when "it reflects an 'exercise of discretion of judgment calls.'" *Ancient Coin Collectors Guild*, 641 F.3d at 513 (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993)). As one illustration of this general principle, the Circuit upheld an agency's decision to withhold factual summaries culled from a larger universe of facts. "In doing so, the selection of the facts thought to be relevant is part of the deliberative process; it necessarily involves policy-oriented judgment." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014).[3] "When final decisionmakers rely on others

---

[3] *See also Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 169 (D.D.C. 2017) (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513–14) (quoting *Ancient Coin Collectors Guild*, 641 F.3d at 513-14) (factual summaries culled from larger universe of facts presented to the agency "'reflect[ed] an exercise of judgment as to what issues

7

to condense a mass of available information into a summary or set of factual findings that the staff thinks important to the final decisionmaker, the deliberative-process privilege applies." *Reinhard v. Dep't of Homeland Sec.*, Civ. A. No. 18-1449 (JEB), 2019 WL 3037827, at *7 (D.D.C. July 11, 2019).

For example, in an analogous case, this Court held that non-disclosed portions of an investigative report of an equal opportunity complaint prepared by an Army investigator were pre-decisional and thus protected by the deliberative process privilege. *Fortson v. Harvey*, 407 F. Supp. 2d 13, 16 (D.D.C. 2005). The portions reflected elements of the decision-making process because they contained "investigative findings and/or recommendations" that were submitted to the investigator's superior for his approval. *Id.* As the *Fortson* court reasoned, "disclosure of this type of information could chill an investigating officer's willingness to engage in an open discussion with their superior officers with respect to their findings of fact and recommendations when investigating complaints." *Id.* at 16-17.

In the same way here, CRCL relies on its subject-matter experts to investigate civil rights complaints. *See* Def.'s SMF ¶ 8. CRCL's experts conduct on-site investigations and prepare detailed reports that contain the experts' observations and findings and that provide CRCL with recommendations based on applicable standards. *See id.* ¶ 10. As the Agency's declarant explained, "the Department has determined that any factual information . . . that the Department withheld are inextricably intertwined with the experts' preliminary findings, recommendations, opinions, or policy-related discussions that the Department has deemed to be deliberative and

---

are most relevant to the pre-decisional findings and recommendations'"); *McKinley v. Bd. of Governors of the Fed. Rsrv. Sys.*, 849 F. Supp. 2d 47, 63–64 (D.D.C. 2012) (holding that "purely factual" material was protectible under Exemption 5 because "[defendant] culled selected facts and data from the mass of available information").

pre-decisional." Def.'s SMF ¶ 27. "Disclosing any remaining facts in the withheld material would reveal the nature and substance of the Department's pre-decisional deliberations." *Id.*

The Department's evidence establishes that its decision-makers rely on CRCL's experts to conduct investigations of civil rights complaints. Relying on their subject-matter expertise, the experts will reduce their unverified observations into a report that contains a set of factual findings that the experts believe to be important to the Agency's decision-makers. *See Reinhard*, 2019 WL 3037827, at *7. As supported by abundant authority in this Circuit, CRCL's experts' factual findings are properly withheld as they are "both revelatory of the [Department's] deliberative process and the investigator's judgment." *See id.*

Moreover, release of the experts' factual findings would "severely undermine" the Department's ability to investigate these complaints and gather the information that its decision-makers need to address the policymaking concerns at issue in the complaints. *See Quarles v. Dep't of the Navy*, 893 F.2d 390, 392-93 (D.C. Cir. 1990) (withholding factual material because it would expose agency's decision-making process and chill future deliberations); *Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 169 (D.D.C. 2004) (protecting notes taken by SEC officials at meeting with companies subject to SEC oversight; though factual in form, the notes would, if released, "severely undermine" the agency's ability to gather information from its regulates and in turn undermine the agency's ability to deliberate on the best means to address policymaking concerns in such areas). The Department's evidence establishes that any factual material that it withheld from the expert reports is non-segregable and an "an integral part of the protected act of deliberatively formulating policy." *See Nat'l Sec. Archive*, 752 F.3d at 465 (quoting *Mapother*, 3 F.3d at 1538).

9

### III. Plaintiff Fails to Establish That the Information That the Department Withheld Is Already in the Public Domain.

"'[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'" *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). Prior disclosure of similar information does not suffice as an official acknowledgement of information by prior disclosure that may compel disclosure over an agency's otherwise valid exemption claim. "Instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." *Id.* (quoting *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 201, 203 (D.C. Cir. 1993)) (emphasis in the original).

Applying these standards, Plaintiff fails to "point[] to [any] specific information in the public domain that appears to duplicate" the information in the contested withholdings. *See Wolf*, 473 F.3d at 378. The mere fact that the Department closed an investigation, or that it discussed an investigation in other reports, does not prove that the specific information that the Department withheld from the expert reports is already in the public domain. *See* Pl.'s Mem. at 20-21. At most, Plaintiff has established the prior disclosure of similar information that does not suffice to defeat the Agency's valid exemption claims.

### IV. The Department's Evidence Shows Reasonably Foreseeable Harm.

The foreseeable-harm requirement imposes an "independent and meaningful burden on agencies." *Ctr. for Investigative Reporting v. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019). "To meet this meaningful burden, an agency must identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Keeping Gov't Beholden, Inc. v. Dep't of Just.*, Civ. A. No. 17-1569 (FYP), 2021 WL 5918627,

10

at *8 (D.D.C. Dec. 13, 2021) (internal quotation marks, alterations, and citation omitted). "Agencies may take a categorical approach and group together like records . . . but when using a categorical approach, agencies must provide more than nearly identical boilerplate statements and generic and nebulous articulations of harm." *Id.* (internal quotation marks, alterations, and citations omitted). An agency must instead offer "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Center for Investigative Reporting*, 436 F. Supp. 3d at 107.

On the first of the two protected interests implicated here, Defendant's evidence shows that release of the privileged material will impede the Department's ability to investigate allegations of civil rights and civil liberties violations. Def.'s SMF ¶ 23. The evidence provides the necessary "context" and "insight" into the specific decision-making process at issue and how Court-ordered disclosure will cause harm to the Agency's deliberative process. *Jud. Watch, Inc. v. Dep't of Just.*, Civ. A. No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). As Defendant's Motion demonstrated, disclosure of the privileged portions of the expert reports would reveal the Agency's "evolving thought-processes" and thus undermine the Agency's ability to "freely engage in the candid 'give and take' and to seek advice and input to further agency policy or actions." *See Keeping Gov't Beholden*, 2021 WL 5918627, at *10 (citation omitted) (finding that disclosure would "impair everyone involved . . . from 'thinking, writing, and advising freely,' which in turn 'could harm the quality and accuracy of Directors' statements in the future'").

In the same way here, the Department's evidence shows that CRCL's subject-matter experts would be unable to offer their uninhibited opinions and recommendations concerning the allegations in the civil rights complaints under investigation without continued assurances of

11

confidentiality. Def.'s SMF ¶ 23; *see also Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (internal quotation marks and citation omitted) (the deliberative-process privilege "serves to preserve the open and frank discussion necessary for effective agency decisionmaking").

On the second protected interest, the Department's evidence further establishes that it would cause public confusion to release its subject-matter experts' preliminary findings and recommendations. Def.'s SMF ¶ 24; *see also Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (citation omitted) (recognizing that the deliberative process privilege serves to "protect against . . . misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action").

In both cases, the Department's explanation sufficiently "identif[ies] specific harms to the relevant protected interests" that would result from disclosure of the withheld materials. *Judicial Watch*, 2019 WL 4644029, at *5. "Indeed, 'it is difficult to see how [the Agency] could have provided any additional explanation as to how disclosure of the draft will cause future agency communications to be chilled.'" *Keeping Government Beholden*, 2021 WL 5918627, at *10 (citation omitted). The supporting evidence thus satisfied the Department's meaningful burden to show that disclosure of the redacted portions of the expert reports will cause reasonably foreseeable harm to two interests protected by Exemption 5.

Rather than address the Agency's justifications for the contested withholdings in this case, Plaintiff attempts to shift the focus to a previous disclosure of expert reports regarding the Adelanto facility in response to a different FOIA request that is not the subject of this action.

*See* Pl.'s Mem. at 22.[4]  According to Plaintiff's theory, to justify its withholdings in this matter the Agency must show that an earlier disclosure of expert reports that were similar in purpose and content caused harm.  But that is not the correct standard.  Under the plain language of the FOIA statute, an agency may withhold information "if . . . the agency reasonably foresees that disclosure would harm an interested protected by [one of the nine FOIA] exemption[s]." 5 U.S.C. § 552(a)(8)(A)(i)(I).  To satisfy this requirement, an agency need not prove to a certainty that a past disclosure of similar records caused actual harm to an agency's decision-making process.[5]  The Court should thus conclude that the Department has "sufficiently connected the disclosure of all the withheld information to a reasonably foreseeable harm." *See Keeping Gov't Beholden*, 2021 WL 5918627, at *12.

\* \* \*

---

[4]     None of the expert reports that the Department produced as part of this case concern the Adelanto facility.  *See generally* Agency *Vaughn* index.

[5]     Plaintiff has taken the Circuit's reasoning from *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997), out of context.  In the portion of the decision that Plaintiff quotes from, the Circuit was discussing the "working law" exception to Exemption 5.  The *Tax Analysts* court found that the "Field Service Advice Memoranda" ("FSA") at issue were not protected by the deliberative process privilege where the memoranda "contain[ed] the answers of the . . . Office of Chief Counsel to legal questions submitted by [subordinate] IRS and Chief Counsel personnel in the field."  117 F.3d at 617.  The court observed that one of the "main functions" of the FSAs was to promote "uniformity throughout the country on significant questions of tax law," and the memoranda were "routinely used and relied upon by field personnel."  *Id.*  Moreover, the IRS had already been required to make public "Technical Advice Memoranda" that were "quite similar in purpose, [ ] organization, and [ ] content," to the FSAs.  *Id.* at 618.  The court found that "[b]oth types of documents reflect[ed] the law the government [was] actually applying in its dealings with the taxpaying public."  *Id.*; *see also Competitive Enter. Inst. v. Dep't of State*, 486 F. Supp. 3d 171, 183 (D.D.C. 2020).

## **Conclusion**

Plaintiff fails to establish the existence of a genuine dispute of material fact as to any of the contested Exemption 5 withholdings. Therefore, Defendant respectfully requests that the Court grant Defendant's motion for summary judgment, deny Plaintiff's cross-motion, and enter summary judgment in Defendant's favor.

Dated: March 16, 2022
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division


By:        */s/ Daniel P. Schaefer*
     DANIEL P. SCHAEFER, D.C. Bar # 996871
     Assistant United States Attorney
     555 Fourth Street, NW
     Washington, DC 20530
     (202) 252-2531
     Daniel.Schaefer@usdoj.gov

*Counsel for Defendant*