**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL PUBLIC RADIO, INC. and TOM DREISBACH,** | |
| *Plaintiffs,* | |
| v. | **Case No. 1:20-cv-2468-RCL** |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** | |
| *Defendant.* | |

**MEMORANDUM OPINION**

This case concerns a request that plaintiffs National Public Radio, Inc. ("NPR") and investigative journalist Tom Dreisbach (together, "NPR") made of defendant, the United States Department of Homeland Security ("DHS" or "the Department"), pursuant to the Freedom of Information Act ("FOIA"), Pub. L. No. 89-487, 80 Stat. 250 (1966), for certain information pertaining to the detention of migrants at the southern border.

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 17 and 19. For the reasons that follow, Defendant's Motion for Summary Judgment will be **DENIED**, and Plaintiffs' Cross-Motion for Summary Judgment will be **GRANTED**.

## I.   BACKGROUND

### A.   NPR's FOIA Request

The FOIA request at issue concerns records of DHS's Office of Civil Rights and Civil Liberties ("CRCL"), which works to ensure that DHS's policies and activities "preserv[e] individual liberty, fairness, and equality under the law," including through investigating complaints filed by the public. Def.'s Statement of Undisputed Material Facts ¶ 3, ECF No. 17-2.

NPR submitted a FOIA request to DHS on December 5, 2019, seeking all "inspection and investigative reports from CRCL examinations of immigration detention facilities under the auspices of U.S. Immigration and Customs Enforcement (ICE) from January 1, 2014 to December 5, 2019," excluding "personal identifying information about employees and detainees of immigration detention facilities." Compl. ¶ 14, ECF No. 1. DHS responded in March 2020, stating that it had located 1,076 pages of responsive records but that it would withhold those records in full pursuant to FOIA Exemptions 5 and 6—the deliberative process and personnel privacy exemptions, respectively. Letter, James Holzer to Tom Dreisbach (Mar. 16, 2020), Ex. 3 to Compl., ECF No. 1-3.

NPR appealed that decision to the Office of the Chief Administrative Law Judge ("ALJ") for the Coast Guard, who handles DHS's FOIA appeals. The ALJ "agree[d]" with DHS that the withheld documents "are 'intra-agency or inter-agency' documents as contemplated under Exemption 5," and that "some of the documents appear to be predecisional on their face," but he was "uncertain whether any of the predecisional recommendations in these documents were ever adopted by the Agency." June 20, 2020 ALJ Op. at 2, Ex. 5 to Compl., ECF No. 1-5. The ALJ also stated that he was "unable to determine whether the Agency properly applied Exemption 5 to purely factual information in the responsive documents, which federal courts generally prohibit." *Id.* "Moreover," he noted, "as various federal courts recognize, when possible, the Agency must segregate and produce this factual information from the portion of the documents covered by the deliberative process privilege." *Id.* at 3. Accordingly, the ALJ remanded to DHS "to provide [his] office with a further explanation concerning whether the factual materials should/could be segregated and produced," at which point he would "be equipped to rule on whether Exemption 6 applies." *Id.*

DHS responded to the ALJ's remand by providing an explanation of the predecisional nature of the documents, but it did not provide any explanation of segregability. Thus, the ALJ determined that DHS "did not fully comply with [his] request." Aug. 20, 2020 ALJ Op. at 1, Ex. 6 to Compl., ECF No. 1-6. Because the ALJ determined that "another remand would only delay the final administrative action in this case, [he] provid[ed] [NPR] with [a] letter constituting final agency action" so that NPR could "appeal this matter to Federal District Court to seek further relief." *Id.*

**B. Proceedings in this Court**

NPR filed the present action on September 3, 2020, seeking declaratory and injunctive relief. On October 9, 2020, the Court ordered DHS to file a *Vaughn* index[1] and accompanying dispositive motion within 30 days. *See* Order, ECF No. 9. On the parties' joint motion, the Court vacated that deadline and approved a scheduling order proposed by DHS, whereby DHS would process the documents at issue on a rolling basis, with multiple joint status reports concluding by April 12, 2021. *See* Order, ECF No. 11; Joint Mot. to Vac. Briefing Schedule at 3–4, ECF No. 10.

Pursuant to the scheduling order, DHS produced 1,094 pages of responsive documents to NPR between December 2020 and February 2021, but those documents were extensively redacted pursuant to FOIA Exemptions 5 and 6. Pls.' Statement of Undisputed Material Facts ¶ 29, ECF No.19-2; Def.'s Response to Pls.' Statement of Undisputed Material Facts ¶ 29, ECF No. 20-1. In an April 30, 2021 joint status report, the parties agreed that NPR would "identify a sample set of up to ten reports drawn from the full set of responsive records . . . that include contested Exemption 5 withholdings." Joint Status Rep. (Apr. 30, 2021) at 1–2, ECF No. 12. Within 30 days thereafter,

---

[1] A *Vaughn* index is a table, common in FOIA cases, "describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).

DHS would "prepare and produce to [NPR], through counsel, a draft *Vaughn* index that [would] include a description of the Exemption 5 withholdings for the sample reports that [NPR] identified." *Id.* Then the parties would "confer to determine if the parties' disputes on contested Exemption 5 withholdings can be resolved without the Court's involvement." *Id.* at 2. Only NPR, however, stuck to that plan. NPR identified a sample set of six reports on May 4, 2021, but by June 29, 2021—more than 50 days later—DHS still had not produced a draft *Vaughn* index. *See* Joint Status Rep. (June 29, 2021) at 1–2, ECF No. 14. The parties apparently determined that they would not be able to resolve the dispute without the Court's involvement, and they filed a joint proposed summary judgment briefing schedule on November 3, 2021, *see* ECF No. 15, which the Court approved, *see* ECF No. 16.

Pursuant to the summary judgment scheduling order, DHS filed its motion for summary judgment and accompanying *Vaughn* index, ECF Nos. 17, 17-3, on December 15, 2021. NPR filed its cross-motion for summary judgment, ECF No. 19, on January 14, 2022. With the summary judgment briefing now complete, both motions are ripe for review.

## II.   LEGAL STANDARDS

### A. FOIA and its Exemptions

FOIA provides a mechanism for members of the public to obtain government records. The statute "mandates a strong presumption in favor of disclosure," *A.C.L.U. v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (internal quotation marks and citation omitted), and "agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions," *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). Furthermore, under the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), an amendment to the statute that Congress enacted in 2016, the requested agency may only

4

withhold information if it "reasonably foresees that disclosure would harm an interest protected by" the relevant exemption, 5 U.S.C. § 552(a)(8)(A)(i)(I).

In this case, the Department invoked FOIA Exemptions 5 and 6. Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." *Id.* § 552(b)(5). Exemption 6 extends to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).

### B. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court evaluating a summary judgment motion must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Arthridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010) (internal quotation marks and citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *Am. Civ. Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C.

Cir. 2011). "Typically it does so by affidavit," *id.*, and by submitting "*Vaughn* indices describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson*, 565 F.3d at 862. "Summary judgment is warranted on the basis of agency affidavits [and the *Vaughn* index] when the affidavits [and/or the *Vaughn* index] describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (internal quotation marks omitted) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. C.I.A.*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

However, "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). The Court must also determine whether the agency has shown "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). If the Court finds it necessary "in order to make a responsible de novo determination on the claims of exemption," it may, in its discretion, conduct *in camera* review of the records at issue. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987); *see* 5 U.S.C. § 552(a)(4)(B).

### III.    ANALYSIS

As noted above, DHS cited both FOIA Exemption 5 and Exemption 6 to justify withholding information responsive to NPR's FOIA request in this case. At this stage, NPR only challenges the Exemption 5 withholdings, not the Exemption 6 withholdings. Accordingly, the Court need only consider whether DHS properly relied on Exemption 5.

As a threshold matter, Exemption 5 will only apply if the agency shows that the information withheld was "inter-agency or intra-agency." 5 U.S.C. § 552(b)(5). NPR does not dispute that the information withheld in this case satisfies that threshold requirement.

"To carry its burden at summary judgment" in a FOIA Exemption 5 case, "the government must demonstrate that (A) the materials at issue are covered by the deliberative process privilege, and (B) it is reasonably foreseeable that release of those materials would cause harm to an interest protected by that privilege." *Reporters Committee for Freedom of the Press v. Fed. Bur. of Investig.*, 3 F.4th 350, 361 (D.C. Cir. 2021). For the reasons that follow, the Court concludes that DHS has met its burden on the first requirement with respect to only some of the information withheld, and that it has not met that burden at all on the second requirement. Accordingly, DHS may not withhold any of the responsive information at issue under FOIA Exemption 5.

## A.  The Deliberative Process Privilege Applies to Only Some of DHS's Withholdings

The deliberative process "privilege may only be invoked for documents that are both [1] predecisional and [2] deliberative." *Reporters Committee*, 3 F.4th at 362. In the present case, DHS argues that all of the information withheld under Exemption 5 satisfies both requirements. In response, NPR argues that *some* of the withheld information was either never predecisional or has lost its status as such, and that much of that information is too factual to be deliberative. The Court agrees with NPR in part: Although DHS has met its burden of demonstrating that all of the withheld information is predecisional, much of that information is too factual to be deliberative.

### 1.  DHS has shown that the withheld information is predecisional.

DHS argues that all of the information withheld is predecisional because it was prepared to help CRCL advise the Department on the civil rights and civil liberties implications of the conditions at detention centers and what, if any, steps to take in response. NPR counters that at

least some of the information cannot be predecisional because DHS has not shown what decision it relates to, and because DHS has already acted on some of it. On this point, the Court agrees with DHS.

"Documents are 'predecisional' if they were generated before the agency's final decision on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021). However, "[t]o show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish 'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (Hogan, J.) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

DHS notes, and NPR does not dispute, that CRCL's "statutory role is to advise DHS leadership and personnel about civil rights and civil liberties issues." Def.'s Mem. in Supp. of S.J. at 12, ECF No. 17-1 (citing Decl. of Rosemary Law ("Law Decl.") ¶ 22, Ex. 1 to Def.'s Mot. for S.J., ECF No. 17-3). In one of the declarations supporting DHS's motion for summary judgment, CRCL's FOIA Officer, Rosemary Law, states that "CRCL will review one or more expert Reports before preparing a recommendation memo that contains CRCL's recommendations concerning any allegations, findings, or best practices" at the detention facilities. Law Decl. ¶ 20. In other words, DHS's position is that CRCL-retained experts tour the detention facilities and share their findings and recommendations to help inform CRCL's recommendation to the Department as to whether conditions at those facilities warrant any action. That explanation is reasonably specific, logical, and uncontroverted by other evidence in the record or by evidence of bad faith, which is all FOIA requires of an agency at the summary judgment stage. *Larson*, 565 F.3d at 862

NPR argues that at least some of the withheld information—it is not clear how much—cannot be predecisional "[b]ecause DHS has not identified what decision resulted from each of the responsive reports." Pls.' Mem. in Supp. of Cross-Mot. for S.J. ("Pls.' Mem.") at 18–19, ECF No. 19-1. But that argument misreads Circuit precedent. NPR relies on *Morley v. C.I.A.*, 508 F.3d 1108 (D.C. Cir. 2007), in which the Circuit held that Exemption 5 did not apply to information that the Central Intelligence Agency ("CIA") withheld because that agency failed "to pinpoint an agency decision or policy to which these documents contributed." *Id.* at 1127 (internal quotation marks and citation omitted). But in that case, the CIA apparently did not connect the withheld information to *any* policy or decision whatsoever. *See id.* And in other decisions, the Circuit has clarified that information may also be predecisional if it is prepared as part of a deliberative process about an *existing* policy that is the subject of public criticism. *See Reporters Committee*, 3 F.4th at 362–63; *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993); *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194–97 (D.C. Cir. 1991). That is precisely why DHS represents it retained the experts who wrote the reports at issue. And as the Supreme Court has reasoned, it makes little sense for the privilege to turn on the identification of a specific decision, because "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies," and that "process will generate memoranda containing recommendations which do not ripen into agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975).

NPR also argues that at least some of the withheld information has lost its predecisional status, but that argument misses the mark. As NPR correctly notes, the Circuit has held that "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp.*, 617 F.2d at 866. But in this case, NPR does not identify

any specific advice or recommendations in the Exemption 5 withholdings that later became DHS's position. Instead, it merely notes that "CRCL closed four of the 16 investigations reflected in the responsive records *before* DHS produced those records to NPR," and that "DHS also disclosed significant details from an additional four investigations *before* it produced the related records to NPR." Pls.' Mem. at 19 (emphasis in original) (citing ECF Nos. 19-5–15, Exs. 2–12 to Decl. of Maxwell S. Mishkin ("Mishkin Decl."), ECF No. 19-3). That an agency closes an investigation or discloses some unspecified details from that investigation does not mean that it has already adopted or used the investigators' advice and recommendations. Thus, NPR has not demonstrated that DHS's Exemption 5 withholdings have lost their predecisional status.

For these reasons, DHS has shown that its Exemption 5 withholdings in this case are predecisional, and thus they meet the first of the deliberative process privilege's two requirements.

### 2.  DHS has not shown that all of the withheld information is deliberative.

The Court now turns to the second requirement—that the withholdings be deliberative. DHS argues that all of the information it withheld under Exemption 5 is deliberative because it "contain[s] unverified observations of first impression, expert analyses of facts and information gathering during the course of the expert's investigation of the facility, and the uninhibited opinions and recommendations of [CRCL's] expert consultant intended for evaluation and review by the Office." Def.'s Mem. at 13. NPR does not dispute that the portions of the withheld information constituting analysis, opinion, or recommendations are deliberative, but it argues that "unverified observations of first impression" are not deliberative and thus are not protected by Exemption 5. The Court agrees with NPR on this point.

To be deliberative, a "document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at

1144. "Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation marks and citation omitted). Thus, an agency may meet its burden of showing that information withheld under Exemption 5 is deliberative only if "the selection or organization of facts is part of [the] agency's deliberative process." *Id.*

DHS's argument about "unverified observations of first impression," while creative, finds no support in extant FOIA jurisprudence. Most of the cases DHS cites (for the first time in its reply) for the proposition that such information is deliberative deal with the culling or organization of an *existing* collection of facts into a summary, not the initial *finding* of those facts. *See Hardy v. Bur. of Alcohol, Tobacco, Firearms and Explosives*, 243 F. Supp. 3d 155, 169–70 (D.D.C. 2017) ("records of interviews and interview notes" distilled from interviews themselves); *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 465 (D.C. Cir. 2014) ("draft agency history" constructed from existing documents); *McKinley v. Board of the Fed. Reserve Sys.*, 849 F. Supp. 2d 47, 64 (D.D.C. 2012) ("staff culled selected facts and data from the mass of available information"); *Ancient Coin Collectors Guild*, 641 F.3d at 513 (internal quotation marks omitted) ("factual summaries . . . culled by the Committee from the much larger universe of facts presented to it"); *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) ("factual material . . . assembled through an exercise of judgment in extracting pertinent material from a vast number of documents").

DHS's invocation of cases dealing more explicitly with "factual findings" is equally unhelpful in establishing "unverified observations of first impression" as a category of deliberative information. In addition to being nonbinding on this Court, those cases deal with factfinding akin to that done by a jury or judge at trial, that is, making weight and credibility determinations from

11

an existing universe of evidence, rather than gathering evidence in the first instance. *See Reinhard v. Dep't of Homeland Sec.*, No. 18-cv-1449-JEB, 2019 WL 3037827, at *7 (D.D.C. Jul. 11, 2019) (emphasis added) ("selection of [] facts" "condense[d] [from] a mass of available information into a *summary* or *set* of factual findings"); *Fortson v. Harvey*, 407 F. Supp. 2d 13, 16–17 (D.D.C. 2005) ("investigative findings and/or recommendations . . . submitted to [equal-opportunity complaint adjudicator] for his approval"). DHS does not cite a single case in which a court has held that factual information was deliberative simply because it was "unverified" or an "observation of first impression."

And considering DHS's position as a matter of first impression, this Court will not be the first to endorse it. That position stands in significant tension with Circuit precedent. The Circuit has recognized the "exercise of discretion and judgment calls" principle only as an *exception* to the general rule that "[p]urely factual material usually cannot be withheld under Exemption 5." *See Ancient Coin Collectors Guild*, 641 F.3d at 513. If that exception can apply both to the culling of an existing collection of facts *and* the work of building that collection of facts, then it threatens to swallow the rule. This Court declines to so expand the exception.

With these principles in mind, much of what DHS withheld pursuant to Exemption 5 is just the sort of purely factual information that ordinarily is not deliberative. For example, the table of contents in one of the redacted documents disclosed to NPR indicates that DHS withheld information such as the "[s]quare [f]ootage per [d]etainee," the "[r]atio of [t]oilets to [d]etainees," the "[r]atio of [w]ashbasins to [d]etainees," and the "[r]atio of [s]howers to [d]etainees" at a detention facility. Envt'l Health and Safety Rep. for W. Tex. Det. Facility, at 1, Ex. 15 to Mishkin Decl., ECF No. 19-18. DHS has not demonstrated that the gathering of such purely factual

information involved discretion or judgment calls, and thus the deliberative process privilege cannot apply.

Because "unverified observations of first impression" are not deliberative in nature, the deliberative process privilege applies only to the withholdings in this case that represent the experts' analysis, opinions, or recommendations.

## B. DHS Has Not Adequately Demonstrated Reasonably Foreseeable Harm

As explained above, DHS has shown that the deliberative process privilege applies to the portions of its Exemption 5 withholdings that represent its experts' analysis, opinions, or recommendations. But that is not the end of the matter. Under the FOIA Improvement Act, DHS must also demonstrate that that it is "reasonably foresee[able] that disclosure" of those portions of the documents "would harm an interest protected by" Exemption 5. 5 U.S.C. § 552(a)(8)(A)(i)(I). DHS argues that disclosure would result in reasonably foreseeable harm because it would (1) undermine the confidentiality experts need to offer candid advice and (2) result in public confusion about the Department's position. NPR argues, and the Court agrees, that DHS has not made that showing with respect to any of the Exemption 5 withholdings.

### 1. DHS's deliberation-chilling justification is insufficiently specific.

"In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'— not 'could'—adversely impair internal deliberations." *Reporters Committee*, 3 F.4th at 369–70. The agency may not simply rely on "boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions." *Id.* at 370. Rather, it must give "a focused and concrete demonstration of why disclosure of the particular type of material at issue

will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

Here, DHS relies primarily on just the sort of boilerplate justifications that the Circuit has held insufficient to establish reasonably foreseeable harm. The Law Declaration summarizes the primary justification that DHS gives for its Exemption 5 withholdings:

> Court-ordered disclosure of the information would severely undermine the Department's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process . . . to offer uninhibited opinions and recommendations on the matters at issue. Without the continued assurance of confidentiality, CRCL's expert consultants would not provide the Department with the meaningful information it needs to properly investigate civil rights complaints. Maintaining the confidentiality of these types of pre-decisional and deliberative communications is critical for the Department to carry out its mission.

Law Decl. ¶ 26. Every single entry in the *Vaughn* index repeats this justification in no more specific form:

> Disclosure of this information would chill the free and frank exchange of ideas and recommendations at DHS, including between CRCL's expert and CRCL, and between CRCL and the affected DHS component agencies that have been the subject of complaints that require investigation. Release of the information would severely undermine the Agency's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process . . . to offer uninhibited opinions and recommendations on the matters at issue.

*Vaughn* Index ¶ 1, Ex. A to Law Decl., ECF No. 17-3; *see also id.* ¶¶ 2–56.

DHS's primary justification is no more specific than one that the Circuit rejected as boilerplate in *Reporters Committee*. In that case, the Federal Bureau of Investigation ("FBI") attempted to justify its Exemption 5 withholdings under the FOIA Improvement Act as follows:

> Disclosure of [material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations] would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their

thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

*Reporters Committee*, 3 F.4th at 370 (alteration in original). The Circuit held that that justification did not adequately demonstrate reasonably foreseeable harm because it was "wholly generalized and conclusory." *Id.*

DHS's justification in this case is remarkably similar—the only significant difference is that it includes the name and function of the requested agency and component. Nowhere does DHS explain *why* disclosure of these *specific types* of reports would chill deliberations more than that of any generic documents to which the deliberative process privilege applies. Moreover, this justification stands in contrast to the more situation-specific justifications that courts have accepted in other cases. *See, e.g, Keeping Gov't Beholden, Inc. v. Dep't of Just.*, No. 17-cv-1569-FYP, 2021 WL 5918627, at *10 (D.D.C. Dec. 13, 2021) (internal quotation marks omitted) (accepting justification that "draft[] of [former Director James] Comey's statement" concerning investigation of former President Donald Trump "would reveal the drafters' evolving through-processes regarding these subjects, as well as ideas and alternatives considered but ultimately rejected by the Director, and thus would undermine the ability of future directors to freely engage" in deliberations on similarly high-profile issues); *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (internal quotation marks omitted) ("OIP's affidavit adequately explained that full disclosure of [legal memoranda recommending dispositions to agency adjudicators] would discourage line attorneys from candidly discuss[ing] their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.").

The fatal flaw in DHS's first "reasonably foreseeable" justification is that it is essentially a restatement of "the generic rationale for the deliberative process privilege itself." *Reporters*

*Committee*, 3 F.4th at 370. It is as if DHS turned the generalized justification from *Reporters Committee* into a game of "Mad Libs" and filled in the blanks with the name of the agency and the things that it does. If such an exercise were sufficient to satisfy an agency's burden under the FOIA Improvement Act, that statute's "reasonably foreseeable" requirement would be so easy to evade as to be essentially dead letter. Of course, agency personnel and contractors are, in the abstract, often more likely to render candid advice if they are sure that advice will not be made public. But the Court must give meaning to the requirement, enacted by Congress after decades of evolving FOIA jurisprudence, that the agency articulate why *this* disclosure would be *particularly* harmful.[2]

### 2. DHS's public-confusion justification is likewise insufficiently specific.

DHS also argues that "the Department's evidence shows that it is reasonably foreseeable that release of the experts' preliminary findings and recommendations would cause public confusion." Def.'s Mem. at 16. More specifically, the Law Declaration explains:

> Moreover, release could cause unnecessary public confusion . . . . [T]he Reports contain the experts' preliminary findings and recommendations. The Reports contain the experts' unverified observations of first impression. For any number of reasons, the Department may not necessarily agree with, or adopt the experts' findings or recommendations. In the Department's view, release of the experts' preliminary findings and recommendations poses a substantial risk of confusing the public as to any eventual final actions of the Department concerning the complaints in question, or the reasons for them.

Law Decl. ¶ 27. Unlike the first justification, this one is not repeated in the *Vaughn* index.

DHS's second justification fails for similar reasons to the first. Courts have recognized guarding against public confusion as one of the interests protected by the deliberative process privilege. *See, e.g.*, *Huthnance v. District of Columbia*, 268 F.R.D. 120, 122 (D.D.C. 2010). However, the FOIA Improvement Act does not allow agencies to show reasonably foreseeable

---

[2] Moreover, as noted above, much of the information that DHS withheld in this case pursuant to Exemption 5 is purely factual. DHS especially fails to meet its burden of demonstrating reasonably foreseeable harm with respect to that information. It offers no specific explanation as to why investigators would be less likely to be forthcoming about such facts as the number of toilets or the square footage at a facility if that information might become public.

harm simply by making boilerplate recitations about the potential for confusion to result from preliminary recommendations or findings. The case of *Center for Investigative Reporting v. U.S. Customs & Border Protection*, 436 F. Supp. 3d 90 (D.D.C. 2019) (Howell, C.J.), illustrates the point. In that case, Customs and Border Protection ("CBP") invoked Exemption 5 to withhold documents "consist[ing] of evaluations, opinions, observations, and other findings that CBP employees" evaluated in contracting deliberations concerning the construction of a wall on the southern border. *Id.* at 107. CBP argued that "[r]eleasing these documents could result in confusion regarding reasons and rationales that may not ultimately be the grounds for any actions CBP may take regarding the contracting, procurement, and construction process." *Id.* The court held that justification insufficient, without more, to establish reasonably foreseeable harm, characterizing it as a "generic, across-the-board articulation[] of harm." *Id.* (internal quotation marks and citation omitted). The court contrasted that generic justification with the more specific example of "candid assessments sent by a subordinate to a superior about the key assumptions underlying [a] cost estimate," which might well result in public confusion about the agency's reasoning. *Id.* at 108.

Similarly, in this case, DHS does not give a single specific explanation as to why disclosure of any particular report would cause public confusion. Instead, it relies on a single paragraph in the Law Declaration that does not explain the potential confusion caused by any particular report in detail. Because that is a generic, boilerplate justification that, once again, essentially restates a rationale for the privilege itself, it does not meet the bar for establishing reasonably foreseeable harm under the FOIA Improvement Act.

For these reasons, the Court concludes that DHS has not met its burden of demonstrating that it is "reasonably foresee[able] that disclosure" of any of its Exemption 5 withholdings "would harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I).

\*   \*   \*

In sum, DHS has met its burden of showing that the deliberative process privilege applies to *some*, but not all of its Exemption 5 withholdings—those representing advice, recommendations, and opinions rather than factual findings—but it has not met its "independent and meaningful burden" of establishing that disclosure of *any* of those withholdings would cause reasonably foreseeable harm to an interest that Exemption 5 protects. *Center for Investigative Reporting*, 436 F. Supp. 3d at 106. Accordingly, the Court concludes that all of DHS's Exemption 5 withholdings in this case were improper.[3] Because NPR only disputes the applicability of FOIA Exemption 5 in this case, nothing in this Memorandum Opinion nor the accompanying Order should be construed to require DHS to disclose information responsive to NPR's FOIA request that it withheld pursuant to any other FOIA exemption.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **DENY** DHS's motion for summary judgment, **GRANT** NPR's cross-motion for summary judgment, and **ENTER JUDGMENT** for NPR. The Court will further **ORDER** DHS to re-process NPR's FOIA request in a manner consistent with this Memorandum Opinion, and will retain jurisdiction to consider an award of attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E)(1). A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: _____9/28/22_____

_Royce C. Lamberth_
Royce C. Lamberth
United States District Judge

---

[3] Because the Court concludes that DHS may not lawfully withhold any of the responsive records in this case pursuant to Exemption 5, it has no occasion to consider whether any information lawfully withheld under that exemption is reasonably segregable from other information in the responsive records. The Court also has no occasion to consider NPR's argument that some of the redacted information is already public and therefore may not be withheld under FOIA. *See* Pls.' Mem. at 20–21.